IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | **CHAPTER 7** |
| **RICKY LEE PHILLIPS** ) | |
| **SANDRA DEE PHILLIPS** ) | **CASE NO. 07-71045** |
| ) | |
| **Debtors.** ) | |

## MEMORANDUM OPINION

The matter before the Court is the Debtors' Application for Waiver of the Chapter 7 Filing Fee pursuant to 28 U.S.C. § 1930(f). This matter was heard on August 1, 2007 and was taken under advisement. After due consideration of the facts and circumstances of this case, the Court, for the reasons noted below, concludes that the Application should be denied.

FINDINGS OF FACT

The Debtors filed a joint Chapter 7 petition on July 6, 2007. At that time, the Debtors also filed their completed schedules. The Debtors' schedules reported that the Debtors owned no real property. The Debtors also reported personal property[1] valued at $25,225, all of which was either claimed as exempt or subject to substantial liens. They represented that at the time of filing their bankruptcy case they had neither any cash on hand nor in their bank account.

On Schedule I, the Debtors listed one dependent, a seven year old son, and reported that Mrs. Phillips has gross monthly income of $1,412.15, less payroll deductions totaling $384.63, consisting of $117.67 for payroll taxes, $138.98 for insurance, and $130 for

---

[1] This property included "2 T.V.'s; Computer, Video Game Boxes, VCR/DVD Combo; Stereo" valued at $365 and an unspecified number of guitars valued at $250.

"Christmas Club"[2], for a net monthly income of $1,027.52. The Debtors' Schedule I also reported that Mr. Phillips receives $465 per month in disability benefits, giving the Debtors a combined net monthly income of $1,492.52. The Debtors' Schedule J reported total monthly expenses of $1,467.53, leaving the Debtors with $24.99 per month in excess income. The Debtors' reported expenses include $107 per month for cell phones and $79 per month for satellite service.

On June 10, 2007, the Debtors filed their Application for Waiver of the Chapter 7 Filing Fee.[3] The Debtors' Application reports a family of three, total combined monthly income of $1,492.52 and total monthly expenses of $1,467.53. An affidavit signed by the Debtors was attached to the Application. The affidavit states that Mrs. Phillips is the sole wage earner in the family as Mr. Phillips is disabled and unable to work, that Mr. Phillips's disability results in "substantial medical expenses", and that the Debtors are unable to pay the filing fee. The 2007 poverty guideline for a family of three is $17,170 per year.[4] Accordingly, 150% of the poverty guideline is $2,146.25 per month.

At the August 1, 2007 hearing on this matter, Mr. Phillips testified that he is disabled and unable to work due to pulmonary hypertension. He currently lives with his wife, who works outside the home, and their eight year old son. Mr. Phillips further testified that his

---

[2] Despite reporting a $130 per month payroll deduction for Christmas Club, the Debtors did not report on Schedule B any petition date balance in any Christmas Club account as an asset.

[3] The Debtors initially filed their Application for Waiver of the Chapter 7 Filing Fee on June 6, 2007, however due to a computer error the entire pleading was not filed. Therefore, the Debtors re-filed their Application on June 10, 2007.

[4] Annual Update of the HHS Poverty Guidelines, 72 Fed. Reg. 3,147 (Jan. 24, 2007).

current expenses include $107 per month for cell phone service and $79 per month for satellite service.  The Debtors currently both have cell phones.  Their cell phone plan includes 1,000 minutes per month which the Debtors use to talk with Mr. Phillips's heart, liver, and kidney doctors approximately three to six times per month for lengthy discussions and for their personal calls as well.  Mr. Phillips explained that he previously had a cell phone plan with a lower base monthly rate but, because the Debtors used more minutes than were included in that plan, the present plan actually costs less because the Debtors are no longer exceeding the allowable minutes under the plan.  Mr. Phillips testified that the Debtors now use cellular service exclusively and had to give up residential telephone service because they could not afford it.  With regard to the Debtors' scheduled $79 per month expense for satellite service, he testified that the Debtors only have basic satellite service, that cable is not available to them, and that a traditional antenna is not feasible as an antenna would not get a signal at their home.  The Debtors' satellite service and cell phone service can be canceled at any time, without penalty, as the Debtors are no longer contractually bound to continue either service.  Mr. Phillips further testified that, due to his disability, he takes complicated medications which he must mix each day and that he regularly has blood work done to monitor his health.  The Court notes that although Mr. Phillips testified regarding his disability and the Debtors' affidavit states that Mr. Phillips has "substantial medical expenses" due to his disability, the evidence offered at the hearing did not address the cost of Mr. Phillips's medications or his treatments.  Furthermore, the Debtors' Schedule J indicates that they only spend $50 per month on medical and dental expenses.  No questions were asked Mr. Phillips about the Christmas Club payroll deduction and he volunteered no testimony about it.  He did testify, however, that the Debtors had received a

$2,019 federal income tax refund, although they had incurred a small unspecified balance due on their Virginia income tax return for that year. He testified that they used this refund to "catch up" on bills and household expenses, that no part of it remained and that they were not contemplating bankruptcy at that time.

To the extent that it is an issue of fact, the Court finds that the Debtors have not proven by a preponderance of the evidence that they are unable to pay the normal filing fee in installments.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984. A request to waive a filing fee is a "core" bankruptcy matter pursuant to 28 U.S.C. § 157(b)(2) in that a request made to a bankruptcy court to waive a filing fee due under the statute to the Clerk of that court is inherently a matter involved with the administration of the case, if not the administration of the estate.

28 U.S.C. § 1930(f)(1) permits the bankruptcy court to waive the filing fee in an individual debtor's Chapter 7 case filed after October 17, 2005. *See* H.R. Rep. No. 31, 109th Cong., 1st Sess. 418 (2005). Its exact language is as follows:

> Under the procedures prescribed by the Judicial Conference of the United States, the district court or the bankruptcy court may waive the filing fee in a case under chapter 7 of title 11 for an individual if the court determines that such individual has income less than 150 percent of the income official poverty line (as defined by the Office of Management and Budget, and revised annually in accordance with section 673(2) of the Omnibus Budget Reconciliation Act of 1981) applicable to a family of the size involved and is unable to pay that fee in installments.

28 U.S.C. § 1930(f)(1). The statute, therefore, sets forth a two prong test for determining when the Court can waive the Chapter 7 filing fee under 28 U.S.C. § 1930(f)(1). The first prong of the test requires the Court to compare the debtors' total combined monthly income to 150% of the poverty guidelines published by the United States Department of Health and Human Services applicable to a family of the size involved. If the debtors' total combined monthly income is less than 150% of the poverty guidelines, the Court moves to the second prong, which requires a determination of whether the debtors are unable to pay the filing fee in installments. This Court has had prior occasion to consider and apply this statute and the procedures provided by the Judicial Conference of the United States in the case of *In re Lineberry*, 344 B.R. 487 (Bankr. W.D. Va. 2006) (denying application for filing fee waiver where debtors' evidence did not disclose use of entire substantial tax refund received several months before filing petition and where affidavit revealed purchase of $489 school ring for their high school aged child). In the present case, the Debtors' total combined income is $1,492.52 per month and 150% of the poverty guideline is $2,146.25 per month. Accordingly, the Court concludes that the first prong of this two part test is met and will now turn to its second prong.

In determining whether the debtors are unable to pay the filing fee in installments, this Court held that debtors have the burden of establishing that under the totality of the circumstances they are unable to pay the applicable fee. *Id.* at 493. In *Lineberry*, this Court further held that when making such a determination, it is appropriate to compare the debtors' expenses to the "Internal Revenue Service guidelines that 'establish a standard as to expenses which have been accepted by Congress elsewhere as a starting point in determining reasonableness.'" *Id*. at 492 (quoting *In re Nuttall*, 334 B.R. 921, 923 (Bankr. W.D. Mo. 2005)).

Upon comparison of the Debtors' scheduled expenses with those provided for in the IRS guidelines, it is evident that the Debtors' expenses are within the ranges provided for by the guidelines. The Court, however, notes that the Debtors have scheduled $79 per month for satellite tv service and that they have $24.99 per month in excess income. The IRS guidelines do not expressly deal with an expense for satellite or cable tv service, as they only refer to general categories of acceptable expenses such as food, housing, personal care products and services.

There is scant mention in reported decisions of whether bankruptcy courts should waive the case filing fee where the debtor's budgeted expenses include non-essential but relatively common entertainment or convenience expenses such as satellite or cable tv service, internet service, or cellular phone service. This Court in rulings from the bench has approved fee waivers in other cases under the totality of their respective circumstances where the respective debtors reported cable tv service expense in the $30 to $40 a month range. In the case of *In re Machia*, 360 B.R. 416 (Bankr. D. Vt. 2007), Judge Brown of the Bankruptcy Court for the District of Vermont approved a waiver of the filing fee where the debtor spent $52 a month on cable tv, had already reduced such expense "as much as [he] could", and would have no television reception without cable, 360 B.R. at 418, ruling that "the Debtor's expenses are not unreasonable." *Id.* at 421. Judge Deasy of the Bankruptcy Court for the District of New Hampshire in the case of *In re Stickney,* 2007 Bankr. LEXIS 1983 (Bankr. D. N.H. 2007) considered a trustee's challenge to monthly expenses, of a debtor seeking a fee waiver, of $60 for cable tv, $35 for internet access, $525 for a car payment, $380 for pet care and $105 for cigarettes. The Court considered these expenses in the aggregate and denied a waiver with the following language:

> The Debtor's family income is insufficient to pay even the first and second mortgages on her residence, leaving her no money to pay for basic food and clothing. In schedule I at line 17 the Debtor stated that she expected an increase in family income because her spouse is seeking employment. In schedule J at line 19 the Debtor stated that she did not anticipate any decrease in expenses. Accordingly, it appears that the Debtor views her current family income deficiency as temporary because her spouse is seeking employment and she has no plans to decrease expenses. Based upon those representations, the Debtor has failed to explain how she would be unable to pay the chapter 7 filing fee in installments through a combination of employment of her spouse, whether temporary, permanent or part time, and some reduction or temporary curtailment of the expenses identified by the Trustee.

2007 Bankr. LEXIS at *27-28.

The Court has turned for further help in its analysis to District and appellate court decisions dealing with the general federal *in forma pauperis* statute dealing with waiver of filing fees and appellate costs in other cases in which federal courts have jurisdiction. The language of the current statutory authority reads as follows:

> [A]ny court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner [person] possesses [and] that the person is unable to pay such fees or give security therefor.

28 U.S.C. § 1915(a)(1). The Supreme Court dealt with an earlier version[5] of this statute in the case of *Adkins v. E. I. Du Pont de Nemours & Co.,* 335 U.S. 331 (1948). Although the precise

---

[5] As quoted by the Supreme Court, the statute, then designated as 28 U.S.C. § 832, authorized "a citizen to prosecute or defend actions in federal courts 'without being required to prepay fees or costs or for the printing of the record in the appellate court . . . upon filing in said court a statement under oath in writing, that because of his poverty he is unable to pay the costs of said suit or action or of such writ of error or appeal, or to give security for the same'". 335 U.S. at 333.

situation dealt with in that decision involved printing and associated costs on appeal, the language which it was construing concerned litigants who swore that they were "unable to pay" the costs in question. The District Court had taken the position basically that if there was any way possible in which such litigants or even their counsel could obtain the necessary funds, the application ought to be denied. The Supreme Court, in a unanimous opinion written by Justice Black, took a more humane and liberal approach and held that it was not necessary that the litigants be reduced to absolute destitution to obtain the benefit of the statute, saying:

> We cannot agree with the court below that one must be absolutely destitute to enjoy the benefit of the statute. We think an affidavit is sufficient which states that one cannot because of his poverty "pay or give security for the costs . . . and still be able to provide" himself and dependents "with the necessities of life."

335 U.S. at 339 (quoting apparently from language of the litigants' affidavits). The Court held also that the statute did not require an applicant's attorney also be financially unable to advance the fees in question, but only required consideration of the respective litigant's financial condition. A much more recent lower court decision applied the statute to an applicant's budget which included a $35 per month cable bill in *Kreider v. Shalala*, 1998 U. S. Dist. LEXIS 18108 (E.D. Pa. 1998). The Court without discussion permitted the plaintiff to proceed *in forma pauperis* where her monthly miscellaneous expenses were $522, "all of which are necessities except a monthly cable bill of $35." 1998 U. S. Dist. LEXIS. at *1-2. In two earlier prisoner cases decided prior to the 1996 amendment to the underlying language of the statute to address such situations particularly and more restrictively, the Third and Eighth Circuit Courts of Appeal held that a prisoner's ability to pay for "small amenities of life", *Souder v. McGuire,* 516 F.2d 820, 824 (3d Cir. 1975), or "small physical or material comforts", *In re Smith,* 600 F.2d 714, 716

Case 07-71045    Doc 15    Filed 08/20/07    Entered 08/20/07 14:47:31    Desc Main
Document    Page 9 of 12

(8th Cir. 1979), should not deprive him of the right to litigate his claim *in forma pauperis.*

The explicit wording of the bankruptcy filing fee waiver statute says that such benefit must be limited to those who are "unable to pay". 28 U.S.C. § 1930(f)(1). "Unable" is defined as "lacking the necessary power, authority, or means; not able". *Webster's II New College Dictionary* 1196 (Margery S. Berube et al. eds., Houghton Mifflin, Boston 1995). Thus, to satisfy the second prong of the test, the Debtors are required to persuade the Court that they lack the means to pay the Chapter 7 filing fee of $299 within 120 days, or approximately four months, of the petition.[6]

The Court recognizes that in many households some form of satellite or cable television service has become the norm rather than exception, but that nevertheless such service is not, to say the least, one of the "necessities of life" in the words of the Supreme Court's opinion in *Adkins*. If the Debtors choose to, or are obliged to, discontinue their satellite service to pay the filing fee, they may be deprived of all broadcast television programs until the filing fee is paid in full, but in the scale of human hardships, that certainly doesn't weigh very heavily, indeed it might even be a real benefit. Television is most often used for two primary purposes, entertainment and news, both of which are easily available through other less expensive means. For example, the Debtors own a stereo and a wide range of radio programs are available that continuously broadcast the news and serve to entertain the public. Libraries are filled with books of every variety that are often both educational and enjoyable. Finally, in addition to their

---

[6] Bankruptcy Rule 1006 provides that, upon application, debtors may pay the applicable filing fee in up to four installments and that the final installment must be made within 120 days of the petition date. For cause shown, the court may extend this time to not later than 180 days after the filing of the petition.

two televisions, the Debtors own a computer, video games, and a VCR/DVD combo, all of which can be used for entertainment in lieu of the broadcast programs.

The facts of this case do not oblige the Court to determine definitively whether bankruptcy debtors should be required to choose between cable or satellite television service and bankruptcy relief.  Neither do they even require the Court to decide whether the applicable standard for granting a waiver of the bankruptcy case filing fee is whether inability to pay such fee means without depriving the applicable debtors and their dependents of the "necessities of life" under the Supreme Court's decision in *Adkins.*  The bankruptcy schedules reveal that these Debtors are able to afford a $130 per month Christmas Club account deduction, $107 per month for cellular phone service so that both Debtors can enjoy the convenience of having cell phones, $79 per month for satellite tv service, and an excess of income over expenses of approximately $25 per month.  Based on such budget information, the Court is not persuaded by a preponderance of the evidence that the Debtors are "unable" to pay the filing fee in installments. Because that is the standard established by Congress for this Court to utilize in reviewing the Application, the Court must deny the same.  Under the circumstances presented in this case, the Court further concludes that good cause has been shown to allow the Debtors until December 14,

2007 to pay the filing fee in full. An order to such effect will be entered contemporaneously with the signing of this Memorandum Opinion.

This 20th day of August, 2007.

_William F. Stone, Jr._
UNITED STATES BANKRUPTCY JUDGE

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | |
|---|---|
| **IN RE:** ) | |
| ) | **CHAPTER 7** |
| **RICKY LEE PHILLIPS** ) | |
| **SANDRA DEE PHILLIPS** ) | **CASE NO. 07-71045** |
| ) | |
| **Debtors.** ) | |

**ORDER**

For the reasons stated in this Court's contemporaneous Memorandum Opinion, it is

ORDERED

that the Debtors' Application for Waiver of the Chapter 7 Filing Fee is DENIED. The Debtors are ORDERED to pay the filing fee to the Court no later than December 14, 2007. Further, it is ORDERED that the Debtors not be issued a discharge until the filing fee has been paid in full.

The Clerk is directed to send copies of this Order and accompanying Memorandum Opinion to the Debtors; Debtors' counsel, Renae Alderman Mitchell, Esquire; the Trustee, Charlie R. Jessee, Esquire; and the Office of the United States Trustee.

ENTER this 20th day of August, 2007.

_William F. Stone, Jr._
UNITED STATES BANKRUPTCY JUDGE